May I reserve two minutes for rebuttal or whatever's left? Please do, but watch your own time, thank you. Yes, thank you. May it please the Court, Robert Nersessian of Nersessian & Senkiewicz for the plaintiffs or appellants Gina Fiore and Keith Gibson. Your Honor, this is a case where the defendant, Agent Walden, interdicts travelers at international airports, and apparently, as in this case, that includes at the very boarding gates of those international airports. He begs the Court and asks the Court below who agreed with him to find that this activity is essentially purely local. In contrast, by definition and reason, this activity has tentacles that instantly transcend the local and reach out into interstate commerce and produce consequences of immediate and substantial nature in other states. And it is a tort. With this in mind, and to quote from Burger King v. Rudziewicz, which addresses the issue before the Court, and here's the quote, I quote, Where individuals purposely derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other states for consequences that arise from such activities. And I highlight this part. The due process clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been readily assumed. Does Nevada have an efficacious long-arm statute? Yes, Your Honor. That was noted by the district court in this case, where the district court also, with authority, cited the fact that the stretch of the Nevada long-arm statute is co-equal with the stretch of the due process clause under the Constitution. Did you attempt to get service on the defendant in using the long-arm statute? We personally served him in, there was some confusion with that, but in this case the defendant personally appeared voluntarily. Specifically, the government was keeping, and this would not appear, no, it would not appear in the record, but simply he as a state agent was keeping, working with the DEA. His personal information was totally secret, and we could not get service, and the United States attorney accepted it for him in essence. Well, would that be efficacious to get long-arm jurisdiction over him serving the U.S. attorney? Part of the requirements under the Federal Rules of Civil Procedure are that the U.S. attorney get notice and served as well. And that was part of how the, that's how this whole issue arose. Did Walden actually show up in court in Nevada? Walden showed up in court on a motion to dismiss for lack of jurisdiction through counsel. Did he make a special appearance for the sole purpose of moving to dismiss? They did not make it as a special appearance, but it's my understanding that in the Federal courts that special appearance doctrine has essentially been abolished. Yeah, I guess under Penoyer v. Neff you could nail him just for being there with a general appearance, couldn't you? Yes, but the motion to dismiss for lack of jurisdiction since Penoyer v. Neff, and this hasn't been briefed, but has been expanded to include a motion. The special appearance requirements, as I understand it, are no longer necessary, and as long as it is a motion to dismiss, limited to jurisdiction. When you say Walden showed up, do you mean Mr. Walden himself showed up? No, I said, I included at the end there that it was through counsel.  But I don't believe there was any special appearance written on it, although I don't maintain that that's determinative either. I'm sorry. It would have been hard to nail him because he wasn't there. There you go. Opposing counsel makes a lot of the fact that the identification presented by the plaintiffs in the airport to Walden didn't show that they were Nevada citizens, so that there wasn't a basis really for Walden to know that they were from Nevada, and so, therefore, you were – wouldn't be able to show that Walden's activities were expressly aimed at Nevada. So what's your response to that? Okay. My response to that, Your Honor, is that they were expressly aimed at Nevada residents because they were aimed, one, at Fiori and Gibson, regardless of whether or not he knew. But isn't there an intentional? Isn't there an intentional element? I mean, he has to know that his acts are aimed at Nevada? I would suggest that under Burger King v. Rutzowitz, what he has to know is that it is a fair notice. Not a fair notice that he's going to be hailed into Nevada so much as a fair notice that he is undertaking actions that are going to subject him to jurisdiction elsewhere. And I put in quotes the word fair notice, and this man at a boarding gate interdicted travelers that were on their way out of his jurisdiction and – but also I would add, Your Honor, with respect to the record that was presented, his compatriots, if you will, in Puerto Rico that called forward about the plaintiffs were informed that they were Nevada residents, and he did know that the final destination was Nevada. Everything within his intent, regardless of whether he specifically knew they were Nevada residents, was directed at money that he knew was destined for Nevada, at people that he knew were destined for Nevada, and everything was going to be in Nevada. And I would point out in addition, we have a second – there are two torts here. There's the initial seizure, and then under McSherry, I believe is the name of the case, there's the second false probable cause affidavit that was – But that one, at least as it appears in the record at this point, because I was concerned about that. It doesn't appear that Walden had any additional contact with anybody in Nevada. At least he says he didn't. He had contact with, and it's pled in the complaint, the plaintiff's attorney who had sent him information and was communicating with him. I thought, yes, but he wasn't communicating back, is what he says. He wasn't? That's what he says. Well, he may say that, but that's not – pardon? That's what he said. He said he was getting things, but he wasn't communicating back. Well, he can say that all day, but that's not part of what was pled in the complaint, and he was communicating back. Are we at this point restricted to the complaint with regard to personal jurisdiction? Yes, but if you are restricted to the complaint at this stage with that type of issue being raised, it would be restricted to the complaint with an opportunity to amend. I'm confused. I don't know what you mean by that. Well, certainly there are – In general, with regard to personal jurisdiction, is – I mean, there is some evidence in the record. Is it impermissible to rely on it outside the – I mean, there are some declarations outside the complaint. Is that irrelevant? The declarations outside the complaint, for example, Agent Walden's declarations in response could be argued to be irrelevant, except that he did state that he knew that the destination was Nevada, and the complaint says that he had been informed that – So he said, I did not contact Mr. Narcisi or anyone else in Nevada regarding plaintiffs. That's in his declaration. That's not the same as not interacting with or requesting. If you'll note, the complaint specifically says – Because I received communication, but I didn't contact anybody. The complaint specifically says, Your Honor, that Mr. Walden informed the plaintiffs that if they provided receipts, which is exactly what Mr. Narcisian did, he would release the money. He expected and invited that very contact. If there's any – I would just finish at this point with the statement that, really, we are in a special area here. We are not asking for an extension of the law. We are asking that the law be recognized in this very special area of travelers. Well, you're asking for – I mean, I thought your brief actually was quite interesting, but it would be an entire revolution, actually. I suggest, Your Honor, that it would not be a revolution, that it is in accord with all of the authority, because what it says is – the fair notice requirement is that the defendant have fair notice. And when your job or when you undertake to – for example, Jesse James, if you will, when you undertake to stop people who you know are traveling in interstate commerce who are only in front of you for a fleeting moment, it does not offend to bring the potential tortfeasor before the jurisdiction where his injuries accrue. And it does not – and it does give him fair notice, because that's what he's doing. One last question is that I gather you have – I've used up my time. I know that. But are you – and I'll give you another 30 seconds. But that you have declined to have the case transferred to Georgia. Yes, Your Honor. There's actually a four-year statute in Georgia, and I'm not going to be dishonest on this or try to dissemble. My clients, if this is dismissed, will look for Georgia counsel. That is a very – as noted in the briefs, it's a very involved and very difficult circumstance. There are probably – But why isn't it still better to transfer it to Georgia? Pardon? Why isn't it still better to transfer the case to Georgia? I mean, I found that disturbing just because it looks like an interesting and possibly meritorious case. Why is it – why is it – I'm sorry. Why isn't it better to transfer the case to Georgia? You have a case already filed, and – Oh, why isn't it better? Why isn't it better? Why – Let's just start over again. Then to start over again? First of all, if you start over again, you get to start over again. But more importantly, transferring the case to Georgia rather than bringing it here and – I see. You didn't want to transfer it. What if we transfer it to Georgia? If you transfer it to Georgia, I would suggest that we are then taking forum nonconvenience and venue regulations well past anything that's intended. Well, what if we concluded that there was either not jurisdiction or not venue here but we – would you object to us transferring it to Georgia? Yes, I would, Your Honor. And probably the biggest reason is because, as mentioned in the brief, there's a defendant that there is under specific jurisdiction, jurisdiction in Nevada over, and in Georgia there is not. But you don't have such a person. Yes, I do, Your Honor. It is the person who joined with Agent Walden in the Quantico probable cause affidavit, Virginia, making false statements which would – and I mean false statements together with, Your Honor, willful omissions in order to attempt to establish probable cause. The court says the money was eventually returned. The complaint very clearly notes that the money was returned only after a U.S. attorney, after the probable cause affidavit, intervened and said there's nothing here. Okay? Agent Walden and this Quantico defendant very much did try to steal this money and very much did prevent the money from being returned for an extended period of time, and that Quantico defendant directed his actions at plaintiffs in Nevada, and the money had already gone by that time to D.C. likely, so the only jurisdiction over the Quantico defendant would be in Virginia or Nevada. We don't know his name yet. Thank you very much. Thank you. Good morning. May it please the Court. My name is Kelsey Brown Corcoran. I'm here on behalf of Defendant Walden. The district court correctly dismissed this case for lack of personal jurisdiction. Just to address three brief issues that came up while my opposing counsel was speaking. The first having to do with the allegations in the complaint. This is a Rule 12 dismissal, so the court does accept the allegations in the complaint as true, except to the extent that there are conclusory statements of law and in particular unwarranted deductions of fact. However, when an affidavit has been submitted on the question of personal jurisdiction and there is a contradiction between the affidavits and the complaint, then the court would acquit the affidavit. And we cite Alexander v. Circus Circus for that proposition. And then this Court may also take judicial notice of the original complaint, which was one of the points that we made in our brief. And that goes to the point Your Honor was making about residency. One of the arguments that the plaintiffs push, in particular in their reply brief, is the notion that Agent Walden knew that the plaintiffs were domiciled in Nevada. And I want to point out that the complaint does not at all support the notion that they were domiciled in Nevada. As you pointed out, they had non-Nevada driver's licenses. And the original complaint, which the court may take judicial notice of, specifically stated that their residential properties in Nevada were secondary residences. And then even their amended complaint says that the residences in Nevada are now their primary residences. So this Court, I think, can infer from that that they did not live in Nevada at the time of the incident. Are there any questions about that? Ginsburg. There's no questions factually, but with regard to the intentionally directed three-prong, does that matter ultimately? In other words, does it matter? I know it matters for venue purposes, but for personal jurisdiction purposes, if, I mean, for example, they knew these people had second homes in Nevada and they were selling furniture to them and that their second home was in Nevada or something like that, it wouldn't matter whether they were residents of Nevada. Yeah. I make that point because Schwarzenegger in the three-prong test seems to suggest that you can either purposely direct your activities at the forum state or at the residence. And I read the reply brief as arguing that the latter had occurred here. I see. With respect to purposely directing actions at Nevada, again, this is a search and seizure that occurred entirely in Atlanta. Agent Walden. But why is it silly to say that if you take all of somebody's money and they're going to Nevada and they're going to be in Nevada with no money, that there's an impact in Nevada? The question isn't whether there's an impact in Nevada under Schwarzenegger and Calder. The question is whether Agent Walden purposely directed his activities at Nevada sufficient to establish the minimum contacts necessary for due process. And you're saying because he didn't care where they were going, although he knew they were going someplace other than there. Yeah. And even if he read the ---- Schwarzenegger's counsel says that he knows or should have known that they were going to Nevada. He did. I don't think there's any question about the fact that they were going to Nevada. I earlier was just making the point about their residency. But even there, this is a seizure that happened in Atlanta. At no point did he go to Nevada, contact anyone in Nevada. You're correct that that's in the affidavit. And under those circumstances, there's no case law to suggest that personal jurisdiction can be established on those facts. I do want to talk about the probable cause affidavit that you mentioned earlier, because the ---- in the reply brief, the plaintiffs make the argument that the ---- there's a separate constitutional violation going on with that affidavit. And so as a legal matter, the complaint here alleges one count, one Bivens claim under the Fourth Amendment of unreasonable search and seizure. And when a court adjudicates a search and seizure claim, the only question is whether there was reasonable basis for the seizure at the time it occurred. And an affidavit would be relevant to that inquiry if the affidavit had served as the basis for the seizure. And so that's what happened in the Kingsland case, the Eleventh Circuit case that the plaintiffs cite in their brief. Here we're talking about a seizure or an affidavit that was executed several weeks after the seizure had occurred for the purpose of initiating forfeiture, which never occurred here. And so under these circumstances, that ---- It never occurred, but you had a considerable period of confiscation before they had to recover. They had to go to quite a bit of effort to recover their money. That's right. And so my point, my initial point is just that that affidavit has no bearing on the merits of the seizure claim. It would be a good 1983 claim. Possibly. I don't have a comment on that. I'm not sure I understand what you're saying. There's one ---- you're saying there's one claim. Their complaint alleges a Bivens claim under the Fourth Amendment of unreasonable search and seizure. Right. And I gather that the connective of the ---- how they would explain it, I guess, is they took it illegally and they kept it illegally. I'm not aware of any cases, and they don't cite it in their brief, that would suggest that undue delay in the return of property can be located in an unreasonable search and seizure claim. I think at best you would have maybe a due process claim or a takings claim under the Fifth Amendment, which isn't alleged here. But with regard to a seizure, you're talking about probable cause for the seizure at the time it occurred. So, and even, I mean, we're a little, we're beyond the briefs here, but I would be concerned about whether there would even be a Bivens remedy for a claim of undue delay under the Supreme Court's decision in Wilkie v. Robbins. But I don't think the Court needs to get to any of that, because it's simply not in the complaint. The complaint is talking about an unreasonable search and seizure. And even if this Court were to consider that the probable cause affidavit to be some sort of independent violation, there still wouldn't be a basis for personal jurisdiction, because, again, at that time, there's no support in the complaint or in the record for the notion that the plaintiffs were residents of Nevada at the time that affidavit was executed. Kennedy, what if they had been residents of Guam? What difference does it make? It doesn't make a difference. If the property was taken away without just cause, what suspicion by a busy-bodied DEA agent thought he was going to make a big haul and get a big write-up on his efficiency report? I think all of that would go to the merits of the claim if this case had been brought in Georgia, but it was not. It was brought in Nevada, which is not a form that has a sufficient minimum context for Asian Americans. When these outrages occur at airports, which is where they usually occur, where the dog makes a sniff, almost all money comes smelling like cocaine in certain latitudes. And so the dog makes the sniff, and that's not probable cause of anything. Yeah. And, again, that goes to the merits of the claim that could be adjudicated in the District of Georgia. Frankly, there haven't been. But what about the overall observation? I mean, the trouble with this case is that you probably have all the law on your side, but there does seem to be something to the notion that an agent of the Federal Government who was at an airport and knows that everything he's doing and is doing something with regard to somebody who's instantaneously leaving certainly has reason to know that what he is doing is having an impact on somebody who wasn't there. Now, he may not know where they are, but there are no signs of them being there. They're not local people, and the impact is not local. So it's – and here you are representing him, so he really doesn't have any problem getting a lawyer. The overall original premises of personal jurisdiction really don't apply. He's never going to – maybe he'll come if there's a trial, but that's it. Other than that, he doesn't have a problem getting a lawyer to come here for free. So it's all a fiction is the problem. Well, I think the important thing to remember in this context is that we're talking about a Bivens claim. So Agent Walden is being sued in his individual capacity. I understand. But honestly, that's also a bit of a fiction, because who's going to pay if there's a problem? Not him. True. But to get to the point, if we were to have a trial on this, he would have to go to Nevada. He would have to be deposed. He would be separated from his family. And I think the idea is that when you have a public servant, a Federal employee whose job requires him to interact with individuals from across the country, it's not the case – just to the extent that we're talking about policy interests here, to subject that public servant to the jurisdiction of every court in the country, I think, is problematic. And the Supreme Court recognized that in Stafford v. Briggs. But instead, what we're doing then is we're having plaintiffs who have been injured by government behavior have to hire people across the country and go themselves across the country to litigate those cases. And in terms of actual relative inconvenience, it probably runs in the other direction. Yeah. You know, plaintiffs chose to be in Atlanta. No one forced them to go there. And they chose to leave voluntarily. I think whenever you're talking about jurisdiction – That's questionable when you're dealing with the airlines. Yeah. I certainly know about that. I came – Whether you're any place you want to be when you're flying from San Juan to Las Vegas. I came in from D.C. this morning, so I'm certainly sympathetic. But I think, again, whenever you're talking about jurisdiction, there are going to be competing interests on both sides. The problem is here we have the due process clause, and it simply does not allow for jurisdiction in Nevada over Agent Walden. Okay. Thank you very much. Thank you. We'll give you a minute or so in rebuttal. Go ahead. I won't take the full minute. I'll just point to – I want to highlight that we did allege in the original complaint that they were residents of Nevada and in the amended complaint. No, you didn't in the – I don't know which complaint I read, but the complaint I read said they are now residents of Nevada. But the point is that – and I would point to footnote 9 of our reply brief. There's nothing – they are residents of Nevada, and the law says you can be residents of two states. So the idea that they're not residents of Nevada – The idea is whether they were – whether he was purposely directing his behavior at residents of Nevada. I understand. He didn't know they were residents of Nevada because they had licenses from California. That's a difficult argument. They also had airplane tickets that said that they were traveling to Nevada. And they informed – I'm going to New York this afternoon. Excuse me. I am flying right after this argument to New York. All right? I am not a resident of New York. I understand. And they informed the compatriots of Mr. Walden that they were in Nevada. But I'm not – honest to goodness, Your Honor, I wasn't trying to say that there's some issue as to Walden's knowledge. It is the very argument of the State that they weren't residents of Nevada that I'm arguing against. Thank you. And thank you. Thank you both for your argument in an interesting case. The case of Fiora v. Walden is submitted.
judges: Goodwin, Berzon, Ikuta